UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLY A. GIBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 1:12-cv-0590-SEB-DML |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Kimberly A. Gibbs seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income disability benefits ("SSI") under Titles XVI of the Social Security Act (the "Act"). *See* 42 U.S.C. 1381c(a)(3). For the reasons detailed below, the judgment is AFFIRMED.

## Applicable Standards

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To establish disability, the claimant is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically

acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

The Social Security Administration has implemented these standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 416.920(a).  If disability can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  At step three, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).  The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are disabling.

If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") is determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 416.945.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she

is not disabled. 20 C.F.R. § 416.920(f). Finally, at the fifth step, and considering the claimant's age, work experience, education, and RFC, she will be found disabled only if she cannot perform any other work in the relevant economy. 20 C.F.R. § 416.920(g). The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 988 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

## Administrative Proceedings

Kimberly Gibbs applied for SSI disability benefits in May 2011, and alleged that her disability began on March 23, 2006. (R. 131-136).[1] Her application was denied initially and after reconsideration, and she then requested a hearing. A hearing before ALJ Ronald T. Jordan was held on January 26, 2012. (R. 38). On February 17, 2012, the ALJ issued his decision finding that Ms. Gibbs was not disabled. (R. 10-22). The Appeals Council denied Ms. Gibbs's request for review on

---

[1] In disability paperwork prepared subsequent to her application, Ms. Gibbs stated that her disability began on March 23, 2005. (R. 166). Still later, during the administrative hearing, Ms. Gibbs traced the onset of her disability to a car accident on March 23, 2004. (R. 13).

3

April 4, 2012, making the ALJ's disability determination the final decision of the Commissioner. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010).

At step one of the sequential evaluation process, the ALJ found that Ms. Gibbs had not engaged in substantial gainful activity since the date she filed her application for benefits.[2] At step two, the ALJ concluded that Ms. Gibbs suffered from the following severe impairments: PTSD, depression, borderline intellectual functioning, personality disorder, and presumed seizure disorder. He found that she also suffered from other physical impairments (leakage around her heart, blood clot in neck, strokes, and thyroid disorder), but that they were not severe either alone or in combination. At step three, the ALJ found that Ms. Gibbs did not have an impairment or combination of impairments that met or medically equaled any of those set forth in the Listing of Impairments, and considered whether Ms. Gibbs's neurological signs and symptoms satisfied listings 11.02 (convulsive epilepsy) or 11.03 (nonconvulsive epilepsy), and whether her mental disorders satisfied listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders), and 12.08 (personality disorders).

Next, the ALJ made an RFC determination and concluded that Ms. Gibbs has the capacity to perform the full range of work at all exertional levels, with certain postural limitations due to her "presumed seizure disorder," and additional limitations because of her mental impairments. The ALJ limited Ms. Gibbs to

---

[2] An applicant for SSI benefits must show disability (and financial need) as of or after the date of her application. *See Beliveau v. Apfel,* 154 F. Supp.2d 89, 93 (D. Mass. 2001). Accordingly, Ms. Gibbs would be eligible for SSI benefits as of her application date of November 18, 2009, without regard to the alleged onset date of her disability.

4

"simple repetitive tasks requiring little or no independent judgment regarding work processes," jobs that have predictable and static work goals from day to day, and jobs that require no contact with the public to perform job functions and no more than occasional and superficial contact with coworkers.  (R. 47).

Because Ms. Gibbs had no past relevant work to consider at step four, the ALJ moved to step five to determine whether, based on Ms. Gibbs' vocational profile and her RFC, work existed in sufficient numbers in the relevant economy that she is capable of performing.  Based on the testimony of a vocational expert, the ALJ found that Ms. Gibbs' capabilities fit the requirements of the jobs of assembler, packer, and inspector, which exist in sufficient numbers in Indiana and in the national economy.  Accordingly, the ALJ found at step five that Ms. Gibbs was not disabled.

## Analysis

Ms. Gibbs contends that the ALJ's decision must be reversed and benefits awarded, or that a remand should be ordered, on the ground that the ALJ erred by failing to find that Ms. Gibbs' impairments met listings 12.05C and 12.04, and by making a step three decision without summoning a medical advisor to testify at the hearing.  She also contends that the ALJ's credibility determination is patently erroneous and that the RFC erroneously "omits all consideration of the claimant's quite severe mental impairments," while the "repeated GAF assessments ranging from 40 to 50 prove clearly that [Ms. Gibbs] would not be able to keep a job."

5

### 1. The ALJ did not erroneously fail to evaluate Ms. Gibbs's mental impairments against listing 12.05C.

Listing 12.05C describes a severity of mental retardation that is presumptively disabling. It requires, generally, (a) significantly subaverage general intellectual functioning with deficits in adaptive functioning; (b) evidence that the impairment initially manifested before age 22; (c) a valid verbal, performance, or full scale IQ score of 60 through 70; and (d) a physical or another mental impairment that imposes an additional and significant work-related limitation of function.

Ms. Gibbs faults the ALJ for failing to consider this listing and then attempts to demonstrate that she met its requirements. She relies primarily on the contents of a mental status examination with IQ testing, which was conducted and administered by a state agency physician in 2007 in conjunction with a prior application for disability benefits that was denied. (*See* R. 705-707). With respect to her present application, Ms. Gibbs made no suggestion throughout the administrative process that listing 12.05C or mental retardation generally was at issue in her case. At the hearing, her attorney in his opening statement explained that Ms. Gibbs's disability stems from a "quite severe seizure problem, but it's primarily, major depression with anxiety and psychotic symptoms." (R. 9). Later during the hearing, the ALJ asked Ms. Gibbs to confirm the bases on which she is claiming to be disabled. Her disability report stated that disability stemmed from seizures, suicidal thoughts, schizophrenia, paranoia, anxiety, bi-polar, memory loss,

and abnormal heart beats. She answered "yes," indicating those were the grounds for her disability, and when asked whether there was anything else, she said "no." (R. 10). Her attorney did not suggest that her testimony was wrong or do anything to alert the ALJ that Ms. Gibbs is claiming that she has been impaired by mental retardation of listing level severity initially manifested before age 22. When a claimant is represented at the hearing by counsel, the court can presume that she "made [her] best case before the ALJ." *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). We will not fault the ALJ for failing to address a listing that the claimant and her counsel never suggested was relevant to her disability application.

Even on judicial review, the only evidence Ms. Gibbs points to for proof that she has suffered from mental retardation since before age 22 is her statement in a 2007 record that she was placed in special education classes in school. Placement in special education classes (even if there were school records to corroborate Ms. Gibbs's statement) does not prove that a claimant suffers from significantly subaverage intellectually functioning with deficits in adaptive functioning that were onset before age 22. *Adkins v. Astrue,* 226 Fed. Appx. 600, 605 (7th Cir. 2005) (unpublished) (although claimant "completed the eighth grade in special education classes," that was insufficient to prove significantly subaverage general intellectual functioning or deficits in adaptive functioning before age 22.) Moreover, Ms. Gibbs traced the onset of her severe mental difficulties to a car accident in March 2004 (R. 16-17), well after she turned 22 in 1988.

State agency physicians also did not find that the medical evidence supported analysis of Ms. Gibbs's mental impairments against listing 12.05. As part of the administrative review process, a state agency psychologist—based on all of the record medical evidence—completed SSA forms denominated a Psychiatric Review Technique (R. 498-510) and a Mental Residual Functional Capacity Assessment. These documents express his opinions regarding the listings relevant to Ms. Gibbs and the effects on Ms. Gibbs's functional capacity of her mental impairments. He opined that the evidence supported analyzing Ms. Gibbs's mental impairments against listing 12.04 because of recurrent depression and a mood disorder NOS [not otherwise specified] and listing 12.06 because of post-traumatic stress disorder and anxiety NOS (although he then found that Ms. Gibbs's impairments did not meet the B criteria for either of these listings).

Under all of these circumstances, it was not legal error for the ALJ to fail to evaluate Ms. Gibbs's mental impairments against listing 12.05C.

2. **The ALJ's step three analysis of Ms. Gibbs's depression is supported by substantial evidence and the ALJ was not required to obtain additional expert medical testimony at the hearing.**

Ms. Gibbs argues that the evidence proved that her depression was of such severity that this impairment met or medically equaled the requirements of mental health listing 12.04, and that the ALJ erred in reaching a contrary conclusion. She also contends that the ALJ could not reasonably rely on the opinions of state agency doctors that no mental health listings were met because their opinions were

rendered without considering all of the evidence that was available to the ALJ by the time of the administrative hearing.

The ALJ's step three decision that listing 12.04 was not met or medically equaled turns on his decision that the B criteria of this listing were not satisfied. The B criteria are four broad categories of functioning: daily living activities; social functioning; concentration, persistence, and pace; and episodes of decompensation. A claimant is presumptively disabled by her mental impairments if she has suffered repeated episodes of decompensation of extended duration *and* is markedly limited in one of the other categories, *or* if she is markedly limited in at least two of the three other categories.

The ALJ found that Ms. Gibbs had not experienced any episodes of decompensation of extended duration (a finding she does not challenge) and analyzed each of the other three B criteria against the breadth of the evidence in the record. He compared and contrasted statements made by Ms. Gibbs and her relatives and housemates in the disability paperwork regarding Ms. Gibbs's daily living activities, her socialization skills, and her ability to concentrate on tasks and carry them to completion. Those statements revealed numerous discrepancies among the declarants, and the ALJ concluded that they have tended to understate the robustness of Ms. Gibbs's actual functioning. For example, Ms. Gibbs's sister-in-law (Wendy Lisby) completed one questionnaire that described Ms. Gibbs as virtually unable to take care of her personal grooming without constant reminders and as a person who needs a constant watchful eye and cannot prepare meals or do

much housework because of alleged seizures and an inability to concentrate on what she is doing. But two months later, Ms. Lisby described Ms. Gibbs's daily life to include acting as a caregiver to her mother and who prepares meals, doing the grocery shopping every week, cleaning the house and doing the laundry, and spending the remainder of her day watching television and chatting with friends both in person and using the computer. The ALJ also analyzed Ms. Gibbs's mental health treatment records, including mental status examinations and opinions provided by state agency psychologists as well as Ms. Gibbs's treatment records in 2011 and 2012.

He determined that Ms. Gibbs's mental impairments result in only mild restrictions in her activities of daily living and that she has only moderate difficulties with social functioning and in concentration, persistence, and pace. These findings were supported, as the ALJ found, by the opinions of the state agency psychologists who evaluated the record evidence and concluded that no listing was met or medically equaled. These opinions—by Drs. Lovko and Shipley—serve as substantial evidence supporting the ALJ's step three conclusion. *Filus v. Astrue,* 694 F.3d 863, 867 (7th Cir. 2012) (ALJ did not err in accepting opinions from state agency physicians that no listings were met or medically equaled where "no other physician contradicted these two opinions"); *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006) (Disability Determination and Transmittal forms filled out by non-examining agency experts are all that is required to support a step three decision so long as "there is no contradictory evidence in the record").

Here, no expert has opined that a listing was met or medically equaled. Ms. Gibbs argues, however, that the ALJ was required to have obtained a supplemental expert opinion at the hearing because the state agency opinions were rendered without (1) the benefit of reviewing later medical evidence, or (2) considering Ms. Gibbs's testimony at the hearing. We do not endorse Ms. Gibbs's view that the ALJ could not reasonably rely on the expert opinions regarding equivalence already in the record, particularly because her counsel agreed at the hearing that the medical record was complete. Ms. Gibbs wanted the ALJ to summon a medical advisor and gather more evidence only if he was not convinced that Ms. Gibbs was disabled.

Ms. Gibbs also points to having periodically been assigned GAF scores as low as 40 or ranging from 40-50 on mental status examinations and argues that that evidence proved that she was totally disabled under the mental health listings. As the Commissioner points out, however, the GAF scale used by clinicians "does not have a direct correlation to the severity requirements in [the SSA's] mental disorders listings," 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000), and the case law does not endorse determining disability based entirely on GAF scores. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart,* 69 Fed. Appx. 775 at *4 (7th Cir. 2003) (cited by *Denton)* (stating that ALJ was not required to mention a GAF score of 40 because a GAF score is designed to influence treatment decisions and not to measure disability under the Social Security Act).

11

We are satisfied that the ALJ did not commit any legal error or fail fairly to evaluate the evidence in reaching his decision that Ms. Gibbs was not presumptively disabled at step three.

3.  **The ALJ's credibility determination was not patently erroneous and he fairly explained the bases for his RFC determination.**

The ALJ's RFC determination reflects a studied analysis of all of the pertinent evidence. He carefully combed through mental status examinations of Ms. Gibbs in connection with the current and her prior applications for disability benefits, and he reviewed the psychological evaluations and mental health treatment Ms. Gibbs received outside Social Security Administration proceedings, beginning in May 2011. He explained why he found that Ms. Gibbs required some accommodations in a work setting to account for her moderate difficulties in social functioning, her low intellectual functioning, and her moderate difficulties in concentration, persistence, and pace. He explained why he found that Ms. Gibbs's descriptions of her own extraordinarily limited work functioning were unworthy of belief.

Of significance, during mental status examinations over several years, Ms. Gibbs was found to exhibit inconsistent behaviors, to be deceitful, and to endorse "prominent malingering traits." She told a psychologist that she suffered from seizure disorders that substantially affected her functioning and that her sister had driven her to the appointment because of her fear of a seizure. Yet when she left the appointment, Ms. Gibbs drove away in a car. The psychologist reported that Ms. Gibbs had "endorsed prominent malingering traits of tongue so thick she could

12

not speak, vision only in black and white, and inability to recall who she was as [a] usual and customary [occurrence]." (R. 50). In a prior examination, Ms. Gibbs had also exhibited trouble speaking and kept her fingers in her mouth, though when she was asked to remove them, her speech was perfectly intelligible. (*Id.*). At her most recent mental status examination—in 2011—Ms. Gibbs reported vague mental health symptoms. She stated that she suffered from auditory and visual hallucinations but could not provide any specifics. She said that she frequently has thoughts of suicide, but with "vague plans," no intent to carry them out, and that she contacts a therapist when she experiences those thoughts. She stated that she is generally suspicious of others, but again provided no specific information about any person or group about whom she feels such anxiety. She exhibited a flattening affect, yet was also observed capable of "the full range of affective expression." (R. 53).

      The ALJ also addressed a residual mental functional capacity assessment prepared by Ms. Gibbs's therapist (Denise Davis, M.A.) on January 3, 2012, and a diagnostic listing provided by Ms. Gibbs's psychiatrist, Dr. Subhan, dated January 17, 2012. Dr. Subhan's diagnoses were PTSD and major depression, and he assigned Ms. Gibbs a GAF of 40, although there is no record that Dr. Subhan examined Ms. Gibbs on January 17, and it appears he met with Ms. Gibbs only twice, both in the summer of 2011. Using SSA's form, Ms. Davis checked boxes indicating that Ms. Gibbs was markedly limited in nearly every functional category—all except the abilities to understand and carry out very short and simple

13

instructions and to maintain socially appropriate behavior and adhere to basic grooming standards.  The only support Ms. Davis provided for this assessment was to list the range of symptoms of PTSD and major depressive disorder from the DSM-IV-TR.  She tied none of them specifically to Ms. Gibbs.  The ALJ determined that Ms. Davis's assessment and Dr. Subhan's diagnostic form were entitled to little weight in fashioning an appropriate RFC.  His reasons for doing so—that the records reflected very little interaction over a short time span between Dr. Subhan and Ms. Gibbs and Ms. Davis and Ms. Gibbs, and they failed to address Ms. Gibbs's therapy treatment records which, in fact, had begun to reflect substantial improvement in her mental functioning and health—are adequate.

It is not our charge to evaluate the evidence anew.  Because we conclude that the ALJ thoughtfully evaluated the pertinent evidence and made a determination regarding Ms. Gibbs's RFC that is supported by substantial evidence, we must affirm the Commissioner's decision.

## Conclusion

For the reasons detailed herein, we AFFIRM the decision of the Commissioner.

IT IS SO ORDERED.

Date:  09/24/2013

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Electronically registered counsel of record